## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| RAWLEIGH PRITCHETT, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 12-0182-WS-C |
| | ) |
| WERNER ENTERPRISES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on the defendant's motion for summary judgment. (Doc. 33). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 34, 48, 49), and the motion is ripe for resolution. After careful consideration, the Court concludes that the motion is due to be denied.

## BACKGROUND

According to the amended complaint, (Doc. 20), the defendant was under contract to provide certain trucking services to a non-party ("Boise") that operates a paper mill in Jackson, Alabama. The twelve plaintiffs are or were employed by the defendant as truck drivers fulfilling this contract. The one-count complaint alleges the plaintiffs were not paid overtime compensation in compliance with the Fair Labor Standards Act ("FLSA"). The motion for summary judgment asserts that the plaintiffs are exempt employees.

## DISCUSSION

Summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material

fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. "Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Id*.; *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *Sammons v. Taylor*, 967 F.2d 1533, 1538 (11th Cir. 1992).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick*, 2 F.3d at 1116; *accord Mullins*, 228 F.3d at 1313; *Clark*, 929 F.2d at 608.

"If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick*, 2 F.3d at 1116. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted); *see also* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion ….").

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant …." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).

There is no burden on the Court to identify unreferenced evidence supporting a party's position.[1] Accordingly, the Court limits its review to the exhibits, and to the specific portions of the exhibits, to which the parties have expressly cited. Likewise, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment," *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995), and the Court accordingly limits its review to those arguments the parties have expressly advanced.

**The Motor Carrier Act Exemption.**

The FLSA generally requires payment of time-and-a-half for hours in excess of 40 in a workweek. 29 U.S.C. § 207(a)(1). But "[t]he provisions of section 207 of this title shall not apply with respect to … any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 …." *Id*. § 213(b)(1). This provision is known as "the Motor Carrier Act ["MCA"] exemption." *Abel v. Southern Shuttle Services, Inc.*, 631 F.3d 1210, 1211 (11th Cir. 2011). The defendant's motion is based on this exemption.

"We construe FLSA exemptions narrowly against the employer," and "[t]he employer has the burden to show that an exemption applies." *Abel*, 631 F.3d at 1212. Indeed, the employer must establish the exemption "by clear and affirmative evidence." *Gregory v. First Title of America, Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009) (internal quotes omitted). The Court proceeds with these principles in mind.

---

[1] Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."); *accord Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998) ("The district court has discretion to go beyond the referenced portions of these [summary judgment] materials, but is not required to do so.").

**I. Jurisdiction over the Defendant.**

"There are two requirements for an employee to be subject to the motor carrier exemption." *Walters v. American Coach Lines, Inc.*, 575 F.3d 1221, 1227 (11th Cir. 2009). "First, his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA." *Id*. The plaintiffs concede that this element is satisfied. (Doc. 48 at 5).

**II. Jurisdiction over the Plaintiffs.**

"Second, the employee's business-related activities must directly affect the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Walters*, 575 F.3d at 1211 (internal quotes omitted); *accord* 29 C.F.R. § 782.2(a). The parties focus on the interstate commerce aspect of this element, but the Court must first consider whether the plaintiffs' business-related activities directly affect the safety of operation of motor vehicles in the transportation of property on public highways.

**A. Activities Affecting Safety of Transporting Property on Public Highways.**

Boise's Jackson operation includes three physically separated facilities, consisting of a base mill, a sheeter facility and a warehouse. (Chancey Deposition at 29-31, 42). The base mill site includes two paper machines (J-1 and J-3) and a recycle facility. (*Id*. at 31-34). The sheeter facility site includes the sheeter facility along with a trailer yard and loading docks, where trailers are loaded with product for delivery to customers. (*Id*. at 26, 40-41, 43-44).[2] Communication among the three facilities is by public road, specifically, Industrial Parkway. (*Id*. at 29-30, 42-43). The sheeter facility site is about

---

[2] The affidavits of several plaintiffs confirm this configuration. (Doc. 48, Exhibits 1-3, 5).

2½ miles away from the base mill, with the warehouse another ¼ mile from the sheeter facility. (*Id*.).

The plaintiffs have presented evidence that four of their number exclusively drive trailers filled with jumbo rolls of paper from the base mill to the sheeter facility, then return to the base mill for the next load.[3] Three others split their time between this duty and transporting scrap paper from the sheeter facility to the base mill.[4] Another plaintiff primarily or exclusively transports scrap paper from the sheeter facility to the base mill.[5] It is thus conceded by the plaintiffs that these eight plaintiffs regularly drive motor vehicles on public highways, approximately half that time with property on board. Because they are truck drivers, this business-related activity directly affects the safety of operation of motor vehicles in the transportation of property on public highways.[6] And because the admitted job duties of these plaintiffs require them to drive loaded vehicles on public highways "either regularly or from time to time," their conduct of such duties is sufficient to potentially implicate the exemption. 29 C.F.R. § 782.2(b)(3).

The other four plaintiffs are "lead" drivers. According to their affidavits, two of them drive only on the sheeter facility site, moving empty trailers to the loading docks and moving the loaded trailers off the docks.[7] The other lead drivers perform primarily

---

[3] Based on their affidavits, these plaintiffs are Davis, Whigham, White and T. Moore. (Doc. 48, Exhibits 7-9, 12).

[4] These plaintiffs are D. Moore, Jackson and Montgomery. (*Id*., Exhibits 4, 6, 11).

[5] This is plaintiff Morris. (*Id*., Exhibit 10).

[6] *See Barefoot v. Mid-America Dairymen, Inc*., 1994 WL 57686 at *3 (5th Cir. 1994) ("The plaintiffs, as truck drivers, clearly engaged in activities directly affecting the safety of operation of vehicles on public highways."); *accord* 29 C.F.R. § 782.2 ("The U.S. Supreme Court has accepted the Agency determination, that activities of this character are included in the kinds of work which has been defined as the work of drivers … employed by such carriers, and that no other classes of employees employed by such carriers perform duties directly affecting such 'safety of operation.'"); *cf. Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 42-43 (5th Cir. 1962) (like drivers, driver helpers engage in activities affecting the safety of operation of vehicles for purposes of the MCA exemption).

[7] These plaintiffs are S. Pritchett and Whittaker. (Doc. 48, Exhibits 2, 5).

the same activity, but "[o]n a few occasions" over a three-year period they have performed the duties of the non-lead drivers.[8] Were this the only evidence of their job duties, the former two lead drivers could not be subject to the exemption.[9] But the plaintiffs acknowledge that the lead drivers also haul waste paper, wet lap and wood pulp from the warehouse and the sheeter facility to the base mill, and that they haul pulp from the base mill to the warehouse. (Doc. 48 at 3-4). Moreover, the defendant's affiant states, without contradiction by the plaintiffs, that all the plaintiffs "are regularly required to drive on public roads to transport paper products between the two [sic] Boise facilities." (Davis Affidavit, ¶ 10).[10]

Based on the foregoing, the Court assumes for present purposes that the defendant can satisfy this portion of the test for the MCA exemption.[11]

### B. Interstate Commerce.

It is uncontroverted that no plaintiff has ever transported Boise paper products outside the state of Alabama. (Doc. 34 at 13; Doc. 48, Exhibits 1-12). As the parties

---

[8] These plaintiffs are R. Pritchett and Shamburger. (*Id.*, Exhibits 1, 3).

[9] "[T]he exemption does not extend to employees merely because they engage in activities affecting the safety of operation of motor vehicles operated on private premises." 29 C.F.R. § 782.2(e).

[10] The defendant suggests the plaintiffs have "admit[ted]" that their job duties require them to drive regularly on public roads. (Doc. 34 at 5). For this proposition, the defendant relies on responses to requests for admission. (*Id.* at 5 n.22). However, while the defendant submitted the plaintiffs' responses, it did not submit the requests. (*Id.*, Exhibit 4). It is thus impossible for the Court to determine what the plaintiffs admitted. However, since the plaintiffs have not controverted the defendant's evidence in this regard, the omission is immaterial.

[11] The defendant argues that drivers subject to Department of Transportation ("DOT") requirements are "especially" considered to be employed in positions that affect the safety of transporting property on public highways. (Doc. 34 at 12). According to the defendant, the plaintiffs are so subject. (*Id.* at 4, 14). The plaintiffs dispute some of the defendant's evidence in this regard. (Doc. 48 at 4). Because the plaintiffs have not argued that the resolution of their objections affects whether their driving is an activity affecting the safety of transporting property on public highways, the Court declines to resolve the objections.

agree, however, "purely intrastate transportation can constitute part of interstate commerce if it is part of a continuous stream of interstate travel." *Walters*, 575 F.3d at 1229 (internal quotes omitted). "For this to be the case, there must be a practical continuity of movement between the intrastate segment and the overall interstate flow." *Id*. (internal quotes omitted). The defendant identifies the following as being captured by this rule: (1) the transport of jumbo rolls from the base mill to the sheeter facility; (2) the transport of scrap and/or recycled paper from Jackson to Mobile; and (3) the transport of scrap paper or pulp from Mobile to Jackson. (Doc. 34 at 5-6, 15-16).[12]

### 1. Jumbo rolls.

Boise creates paper from pulp on its J-1 and J-3 machines, the paper leaving the machines in the form of jumbo rolls. (Chancey Deposition at 31-32). The jumbo rolls are just that – so heavy they must be transported to the sheeter facility in 40-foot containers (mounted on removable chassis) specially modified with an additional steel floor and so large that only eight of them can fit on a load. (*Id*. at 50; Davis Deposition at 131-32).

The sheeter facility holds four machines, each of which takes six jumbo rolls at a time and feeds them through the machine, where a rolling knife cuts the paper to the correct size. There are varying sizes into which the machines cut the paper to make copy

---

[12] The defendant also relied initially on transport from the sheeter facility to the "drop yard." (Doc. 34 at 5-6, 15). However, this term apparently refers to the trailer yard and/or loading docks, which are on the same premises as the sheeter facility. As noted previously, the exemption cannot apply to this movement because it does not involve transport on public roads. In its reply brief, the defendant appears to acknowledge, correctly, that *Billingslea v. Southern Freight, Inc.*, 699 F.Supp. 2d 1369 (N.D. Ga. 2010), is fatal to its position. (Doc. 49 at 8-9).

The defendant has also mentioned that certain plaintiffs have driven vehicles to Alabama gas stations and/or repair facilities, but without connecting either activity to the interstate commerce requirement. (Doc. 34 at 5; Doc. 49 at 4). Since neither activity involves the transportation of property aboard a motor vehicle, and since neither has any obvious connection to interstate commerce, it is unclear how such movement could advance the defendant's position. Because the defendant has offered no explanation, the Court will disregard this activity.

7

paper, printing paper, and other types of communication paper. The cut paper is stacked in 500-sheet reams, wrapped, and placed in cartons. The cartons are then stacked on pallets and wrapped. (Chancey Deposition at 31, 37). During this process, if Boise determines there is a section of paper that has wrinkles or some defect, "that roll is dumped and not made into paper." (*Id*. at 52). Boise considers the steps that occur at the sheeter facility to be "part of the production process for copy paper," (*id*. at 36-37), and it does not consider the jumbo rolls to constitute finished paper. (*Id*. at 38, 52).

This evidence, construed in the light most favorable to the plaintiffs, supports the inference that the transport of the jumbo rolls to the sheeter facility occurs during, and not following, the production process. First, the jumbo rolls are not the product that Boise sells but rather the source from which that product (reams) is derived. Indeed, the jumbo rolls are made into various products depending on the size into which the sheeter cuts them. Second, jumbo rolls not satisfying Boise's standards are rejected for use in the process, so they never become product at all. Third, Boise itself considers the production process to be ongoing until the jumbo rolls are cut and packaged, and Boise does not consider a jumbo roll to be a finished product.

The defendant cites to other portions of Chancey's testimony in an effort to minimize its damaging impact. It first notes Chancey's agreement that neither chemical processes nor the addition of raw materials occurs at the sheeter facility. (Doc. 49 at 3-4). This is correct, (Chancey Deposition at 91), but the defendant cites no authority for the counter-intuitive proposition that only such activities can be part of a production process.

Next, the defendant points out that Boise "sells rolls of paper directly to some customers." (Doc. 49 at 4). Chancey testified that some customers buy rolls of specialty paper, which they convert into specialty products on their own machines. (Chancey Deposition at 31, 91-92). These are large rolls, but they are not the jumbo rolls that are sent to the sheeter facility. (*Id*.). Because the defendant's preemption argument is limited to the jumbo rolls transported to the sheeter facility, these other rolls are irrelevant to the present inquiry.

Finally, the defendant insists that Chancey actually agreed the jumbo rolls constitute finished paper. (Doc. 49 at 3 & n. 16). He did not. Counsel asked two questions at once, and Chancey's affirmative answer was to the second question ("In other words, is that paper the same material paper that is ultimately used by Boise's customers?"), not the first. Even could his testimony be construed as the defendant wishes, it would only contradict his prior testimony, with the inconsistency to be resolved by the jury, not the Court.

Its evidentiary challenges exhausted, the defendant tries a legal one. Citing an Interstate Commerce Commission ("ICC") policy statement[13] and a Department of Labor ("DOL") opinion letter,[14] the defendant argues that the interstate journey begins when the jumbo rolls leave the base mill "because no processing or substantial product modification occurs at the sheeter facility." (Doc. 49 at 9; *accord id*. at 11, 13). There are multiple problems with this argument.

The threshold problem is that the defendant did not mention the policy statement or opinion letter, or the concept underlying them, until its reply brief. Indeed, the entirety of the defendant's interstate commerce argument in its principal brief consisted of a quote from *Abel* and *Walters* for the generalized "practical continuity of movement" principle and the ipse dixit that, because the paper on the jumbo rolls eventually crosses state lines, transport of the jumbo rolls to the sheeter facility is in interstate commerce. (Doc. 34 at 13-15). No analysis or authority of any kind was offered to tie this broad, vague statement of law to the specific circumstances, despite the obvious intricacy of the inquiry.

---

[13] Motor Carrier Interstate Transportation – From Out-of-State Through Warehouses to Points in the Same State, 57 Fed. Reg. 19812 (May 8, 1992). The DOT has succeeded to the ICC's role in enforcement of the MCA. *Bilyou v. Dutchess Beer Distributors, Inc*., 300 F.3d 217, 222 n.2 (2nd Cir. 2002).

[14] Opinion Letter, "Intra/interstate Transportation of Gasoline and Section 13(b)(1)," FLSA2005-10 (January 11, 2005).

"District courts, including this one, ordinarily do not consider arguments raised for the first time on reply." *Gross-Jones v. Mercy Medical*, 874 F. Supp. 2d 1319, 1330 (S.D. Ala. 2012). The rule is enforced "[i]n order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them." *Id*. (internal quotes omitted).

Nominally, the defendant's principal brief asserted the basic argument that the movement of the jumbo rolls was part of a continuous stream of interstate travel. (Doc. 34 at 14). But with literally no authority or analysis to support it, this ipse dixit was no more an "argument" for purposes of the reply brief rule than would be a plaintiff's unexplained statement that his power company violated his due process rights. The defendant was not at liberty to offer nothing but a conclusion in its principal brief and withhold any support for the conclusion until its reply. *Cf. Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 131 n.4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue ….").

Even had the defendant timely asserted its no-substantial-modification argument, it would fail. The Court assumes without deciding that the policy statement and opinion letter potentially could be afforded some persuasive weight in the proper context.[15] But this is not the proper context. The issue addressed by these documents is whether and under what circumstances the interstate transportation of property, *once interstate movement has begun*, is cut off by delivery to a warehouse, distribution center or similar

---

[15] "Interpretations such as those in opinion letters – like interpretations contained in policy statements … – do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). "Instead, interpretations contained in formats such as opinion letters are entitled to respect …, but only to the extent that those interpretations have the power to persuade …." *Id*. (internal quotes omitted).

facility. The documents do not address whether and under what circumstances goods still being created at the manufacturer's facility begin an interstate journey.[16]

The defendant has made no argument that the interstate transportation of a product can begin before the product exists. On the contrary, the defendant's argument depends explicitly on the premise that the jumbo rolls constitute finished product. (Doc. 34 at 5; Doc. 49 at 3, 8). The defendant has failed to show as a matter or law or of fact that this premise is correct, and that failure is fatal to its motion.

**2. Transport to Mobile.**

The defendant has evidence that, on a single day in October 2012, plaintiff Morris made two trips from Jackson to Mobile to deliver scrap paper to a purchaser. (Doc. 34, Exhibit 6). The defendant in brief asserts that such trips occur "frequently throughout the year," (Doc. 34 at 6), but the affidavit on which it relies for this proposition says nothing about frequency or even the existence of actual, historical trips. Rather, the affiant states only that such travel "is a task that could be assigned to any of the Plaintiffs at any time." (Davis Affidavit, ¶ 11).

Matters of frequency aside, the defendant has presented no evidence that any loads delivered to Mobile thereafter cross state lines. While the defendant in brief asserts globally that the plaintiffs transport property that will cross state lines, (Doc. 34 at 14, 16), it offers nothing to support that proposition with respect to deliveries of scrap paper

---

[16] The defendant in its reply brief also cites the DOL field operations handbook, (Doc. 49 at 9-11), again too late to be considered. At any rate, the statement therein that moving vehicles on public highways between loading platforms, storage facilities or terminals is transportation in interstate commerce "where such movement is either the beginning or continuation of an interstate or foreign journey," simply begs the question whether that journey has begun. And its statement that coal hauled on public roads to a tipple "where, in a continuous operation, it is unloaded from the truck and cleaned, crushed, or graded and loaded directly into railroad cars for shipment out-of-State," is moving in interstate commerce has no application here, since the cut paper is not loaded directly onto interstate conveyances but taken to a warehouse for storage until it is shipped. (Doc. 49 at 9-10).

to Mobile. With no evidence of interstate travel, the defendant's reliance on deliveries to Mobile cannot support a preemption argument.[17]

### 3. Transport from Mobile.

The defendant has evidence that, in a four-day period in October 2012, plaintiffs R. and S. Pritchett made four trips from Mobile to Jackson with a load of what the defendant variously identifies as scrap or pulp. (Doc. 34, Exhibit 7; Doc. 49 at 11-12). The defendant's affiant states that "Plaintiffs have also been, and at any time could be, required to pick-up scrap paper products in Mobile, Alabama that Boise purchased from other companies, which Plaintiffs then transport back to Boise's drop yard in Jackson, Alabama." (Davis Affidavit, ¶ 11).

As the plaintiffs correctly note, (Doc. 48 at 8-9), the defendant offered no evidence that the property transported from Mobile had previously crossed state lines. On reply, the defendants attempt to rectify this deficiency by submitting excerpts from Chancey's deposition. (Doc. 49 at 12; *id*., Exhibit 1). The plaintiffs understandably object. (Docs. 50, 53).

"[N]othing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief." *Hammons v. Computer Programs and Systems, Inc*., 2006 WL 3627117 at *14 (S.D. Ala. 2006). Absent such a situation, "[i]t is well accepted that … submission of new facts in [a] reply brief is improper." *Sideraulic System SpA v. Briese Schiffahrts GmbH & Co*., 2011 WL 3204521 at *2 n.4 (S.D. Ala. 2011) (internal quotes omitted). The defendant's submission does not fall within the *Hammons* exception but within the *Sideraulic* general rule. The plaintiffs did not raise an argument that for the first time made evidence of interstate travel relevant but merely pointed out the plaintiff's failure to carry its threshold burden of showing the existence of such interstate travel.

---

[17] Even had the defendant timely presented evidence of interstate travel, its argument likely would fail for reasons discussed in Part II.B.3, *infra*.

12

The defendant attempts to excuse its tardy submission on the grounds that the plaintiffs did not notice or take Chancey's deposition until after the defendant filed its motion for summary judgment. (Doc. 52 at 3). But a defendant can hardly be excused from filing a motion for summary judgment supported by at least the bare minimum evidence needed to sustain the motion on the grounds that it did not bother to acquire the evidence until after filing its motion. If the defendant could have obtained the necessary evidence from Chancey or elsewhere in advance of his deposition, it should have done so; if it could not, it should have delayed filing its motion until it had such evidence. In neither event is its submission of new evidence along with its reply brief appropriate.

Even were this evidence considered, the result would not change. Chancey's testimony supports the proposition that any pulp retrieved from Mobile likely would have been brought by Georgia-Pacific ("G-P"), the seller, from outside Alabama, (Chancey Deposition at 96-98, 101-02), but the fact remains that the defendant has evidence of only four such trips,[18] by two plaintiffs (out of twelve), during one week (out of at least 156 covered by the plaintiffs' affidavits).

If the bona fide duties of a member of a group of drivers make him "likely to be called upon in the ordinary course of his work to perform, either regularly or from time to time," driving activities in interstate commerce, "he comes within the exemption in all workweeks when he is employed at such job," even in weeks in which he engages in no such activities. 29 C.F.R. § 782.2(b)(3). "On the other hand, where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are so trivial, casual, and insignificant as to be de minimis, the exemption will not apply to him in any workweek so long as there is no

---

[18] The defendant correctly notes that Boise purchases pulp from G-P "throughout the year" but incorrectly suggests that all these purchases require the plaintiffs to retrieve the pulp from Mobile. (Doc. 49 at 12). In fact, Chancey testified that G-P usually supplies Boise from Alabama assets, and that the October 2012 trips to Mobile were required only because a one-time spike in Boise's demand (due to an unusually long maintenance shutdown) temporarily exceeded G-P's ability to meet that demand with in-state product. (Chancey Deposition at 88, 98). Chancey's testimony does not support an inference that more than four trips to Mobile to retrieve pulp, or anything else, have occurred.

change in his duties." *Id*. "If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job." *Id*.

To illustrate these principles, the DOL described *Morris v. McComb*, 332 U.S. 422 (1947). 29 C.F.R. § 782.2(c)(1). In *Morris*, the Supreme Court held that the ICC had power under the MCA to establish qualifications and maximum hours for a class of drivers because, although interstate travel constituted less than 4% of the employer's services, those trips were distributed generally throughout the year and indiscriminately among all drivers. *Id*. at 423, 433. The plaintiffs invoke the principles underlying both *Morris* and the DOL regulation. (Doc. 48 at 8-9).

As noted, the defendant provided nothing but ipse dixit in its opening brief. Its reply brief does not expressly address the plaintiffs' argument but merely reminds the Court that "this task could be assigned to any of the Plaintiffs." (Doc. 49 at 11). The defendant does not assert that the theoretical possibility it might someday exercise its reserved right to require a plaintiff to pick up a load of pulp from Mobile renders it "likely" that he will be called on to do so "from time to time," and the Court will not attempt to construct or support such an argument on the defendant's behalf. Nor does the amount of interstate travel (four short trips in over three years), the timing of the trips (confined to a single week), the cause of the trips (a fluky plant shortage) and the distribution of the assignment (a single driver making ¾ of the trips) suggest an easy analogy to *Morris*. What appears more likely is that the plaintiffs have no "continuing duty" to haul pulp from Mobile but, at most, may have such a duty assigned "in particular workweeks." If that is so, R. and S. Pritchett may be exempt for the single week in October 2012 based on Mobile travel, the other plaintiffs not at all.

14

### 4. Transport to Texas.

In addition to the intrastate activity addressed in Parts II.B.1-3, which it unsuccessfully attempts to stretch into interstate activity, the defendant points to one category of directly interstate travel – the delivery of loads from Jackson to Garland, Texas. The evidence on this score is that the defendant hired other drivers to fulfill this contract, and the plaintiffs were not hired to perform this task but "could have been asked to fill in for those drivers when needed at any time." (Davis Affidavit, ¶ 12). The defendant's arrangement with Boise to provide this service expired without a single plaintiff ever being asked to make a single trip. (Chancey Deposition at 67-69, 88-89).

Not much else need be said. The defendant thinks so little of this argument that it devoted a single sentence (repeated twice) to the matter in its principal brief and omitted it entirely from its reply brief. (Doc. 34 at 6, 15-16). In view of this silence and the discussion in the preceding section, the defendant cannot succeed on this ground.

### 5. Agreement.

The defendant finds it significant to the interstate commerce inquiry that the plaintiffs each "signed an Agreement attesting he/she is indeed subject to the provisions of" the Federal Motor Carrier Safety Regulations. (Doc. 34 at 7, 16). The defendant does not explain the significance of this circumstance, which the Court fails to grasp. To the extent the defendant intends to suggest the plaintiffs have, by signing this document, waived their rights under the FLSA, the Supreme Court has "held that FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981).

### 6. FLSA coverage.

Finally, the defendant contends that the plaintiffs are covered by the FLSA only if they individually are directly and regularly engaged in interstate commerce. They conclude that, if the plaintiffs are covered by the FLSA, they must also be subject to the

MCA exemption. (Doc. 34 at 13 n.63). As pointed out by the plaintiffs, (Doc. 48 at 10-11), the defendant overlooks enterprise coverage. Without showing that enterprise coverage is impossible (a challenging assignment, given the defendant's status as "the fourth largest trucking company in the United States," (Davis Deposition at 11)), the defendant's argument cannot succeed.

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is **denied**.[19]

DONE and ORDERED this 27th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[19] The plaintiffs' motion to strike, (Doc. 50), is **denied as moot**. As discussed throughout this opinion, the evidence tardily submitted by the defendant does not sustain its motion.