IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAWLEIGH PRITCHETT, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | Case No.: 1:12-CV-12-0182-WS-C |
| | * | |
| WERNER ENTERPRISES INC., | * | |
| | * | |
| Defendant. | * | |

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs herein, by and through their undersigned attorneys and in support of the Motion for Summary Judgment previously filed herein offers as follows:

## INTRODUCTION

By their Motion, Plaintiffs seek Summary Judgment on five (5) issues.

1. Plaintiffs' are not exempt employees under the federal Motor Carrier Act.

2. Plaintiffs are entitled to liquidated damages.

3. Defendant's violations of the FLSA were willful and Plaintiffs are entitled to the three (3) years Statute of Limitations.

4. Defendant's have failed to comply with the FLSA record keeping requirements and accordingly, Plaintiffs should be allowed to prove their damages by estimations through testimony.

5. Plaintiffs' workweek for FLSA purposes run from Monday to the following Monday.

In support of their motion, Plaintiffs adopt as if fully set out herein, the Facts contained in Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 48) filed on May 31, 2013, as well as all exhibits referenced therein (Doc. 48-1 through Doc.48-19). As additional support, Plaintiffs rely on the supplemental facts cited herein and supporting exhibits referenced herein.

## ARGUMENT

**I. Plaintiffs Are Not Exempt by the Federal Motor Carrier's Act from the Overtime Provisions of the FLSA**

Based on the undisputed facts presented to this Court in connection with Defendant's Motion for Summary Judgment and Plaintiffs' opposition thereto, it is undisputed that the Plaintiffs are not exempt from the overtime provisions of the Fair Labor Standards Act. In support of their Motion for Summary Judgment, Plaintiffs adopt, as it is fully set out herein, the legal arguments and legal authority cited in Plaintiffs Brief in Opposition to Defendant's Motion for Summary Judgment (Doc. 48). As is more fully discussed therein, Plaintiffs' activities while working for Werner do not in anyway involve the transportation of goods in interstate commerce. The movement by the non-lead drivers of jumbo rolls from J-1 and J-3 of the Boise base plant to the converting facility does not constitute the movement of finished products and, therefore, those movements are not movements as part of a "continuous stream of interstate travel." Additionally, the movement of waste paper, scrap paper, wet lap or pulp from the sheeter facility, the sheeter yard or the off-site warehouse to the base plant are also not the movement of finished goods so as to constitute movements as part of a "continuous

stream of interstate travel." The movement of trailers by the lead drivers on and off of Boise's loading dock at the sheeter facility does not involve any travel on a public road and therefore, would not qualify under the Motor Carrier Act.

Because none of Plaintiffs' activities involve movement of finished goods in interstate commerce, Plaintiffs are entitled to summary judgment on this affirmative defense.

## II.     **Plaintiffs are Entitled to Liquidated Damages**

Since Plaintiffs are not exempt employees as established in Section I, Plaintiffs are entitled to liquidated damages as a matter of law. When an employer is found to have violated the overtime provisions of the FLSA, they "shall be liable" to the employees affected for unpaid overtime compensation and "an additional amount as liquidated damages." 29 U.S.C. § 216(b). The award of liquidated damages is mandatory unless the defendant pleads and proves the "good faith" affirmative defense. In order to prevail on its good faith affirmative defense, the defendant must prove that it was acting both subjectively and objectively in good faith. *EEOC v. First Citizen's Bank*, 758 F. 2d 397 (9th Cir. 1985). *Dyback v. Florida Department of Corrections*, 942 F. 2d. 1562 (11th Cir. 1991). In order to establish "good faith", the employer must prove that its actions were in good faith and that they had a reasonable ground for believing that their failure to pay overtime was not a violation of the FLSA. *Id*. "To satisfy the subjective good faith component, the employer has the burden of proving it had an honest intention to ascertain what the Act requires and to act in accordance with it." *Dyback*, 942 F. 2d at 1566. In the case at hand, the undisputed

evidence establishes that Werner made no attempt to ascertain what the FLSA required under the circumstances, and therefore they could not have been acting in good faith. Since Werner cannot prove that it acted with both subjective and objective good faith, liquidated damages are mandatory in this case. *Id* at 1567.

It is undisputed that Werner does not have anyone at their corporation whose job responsibilities included insuring compliance with the Fair Labor Standards Act. Werner was served with interrogatories on October 24, 2012, and served their responses on January 23, 2013. (Exhibit 20, Defendant's Responses to Plaintiffs' First Set of Interrogatories). Interrogatory number seven requested Werner to "(p)lease identify any person employed by Defendant whose job responsibilities included ensuring compliance with federal regulations including, but not limited to, the Fair Labor Standards Act. For each person please state their name, job title, current job status, current telephone number and address." Defendant's response begins with boiler plate objections which appear not to relate at all to this request. The response then states that "(w)ithout waiving the foregoing objection, Defendant states as follows: Plaintiffs are responsible to ensure they comply with all federal regulations applicable to them as commercial truck drivers. Further, all employees are responsible to ensure that they conduct themselves in accordance with the law." This response clearly indicates that Werner has no one on their staff to ensure that they comply with the FLSA.

Plaintiffs also asked Werner's 30(b)(6) representative, David Davis, about what efforts were put forth to determine whether Plaintiffs were entitled overtime compensation

under the FLSA. (Exhibit 21, David Davis' Supplemental deposition excerpts pp. 153-158). Davis was in charge of setting up the Boise operation for Werner. (Exhibit 21, David Davis' Supplemental deposition excerpts pp. 16-17). Specifically, Davis was asked whether when the Boise account was put together anyone analyzed whether the drivers would be subject to overtime laws, and Davis stated that one person is responsible for all of Werner's driver's pay packages and all of them are reviewed by legal. (Exhibit 21, David Davis' Supplemental deposition excerpts pp. 155-156). He did not, however, identify anyone who specifically made the requisite analysis concerning the Boise drivers. Davis was then asked if anybody considered whether Plaintiffs might have been entitled to overtime before the Boise contract was implemented. He responded that "I guess for me to answer that is, all of our drivers are hired underneath-- as a DOT compliant truck driver. We go forward with those rules and regulations on every driver we hire." He further stated "(a)nd none of them that we have that are currently of the ten thousand plus drivers do we pay hourly or overtime." (Exhibit 21, David Davis' Supplemental deposition excerpts pp. 155-157).

This exchange makes it clear that Werner went forward with this contract and failed to pay overtime to the Plaintiffs without ever making a good faith attempt to ascertain whether they were entitled to such compensation. Werner moved forward assuming that they were exempt due to the jurisdiction of the DOT. They failed make the requisite inquiry even though they should have known that they were not exempt under the Motor Carrier Act. The contract at issue is expressly calls for the movement of materials from the Boise main plant

to the converting facility about two miles away. (Doc 48- 13 ). Mr. Davis and any other Boise employees familiar with the account know that these movements would not be interstate in nature as they would be fully within Clarke County, Alabama. Additionally, Mr. Davis is well aware that this contract calls for the movement of jumbo rolls which are not a finished product when they would arrive at the converting facility. Werner was required to provide trailers sturdy enough to handle the large, heavy loads. Further, Werner's contract with Boise calls for Boise to pay Werner for any overtime hours worked by Werner employees under this contract. (Doc. 48-13). Failing to make any efforts to ascertain whether Plaintiffs would be entitled to overtime compensation in light of these facts was reckless and entitles Plaintiffs to liquidated damages in an amount equal to the overtime compensation to which they are owed.

### III. Defendant Willfully Failed to Pay Overtime Compensation Pursuant to the FLSA

The general statute of limitations for overtime violations under the FLSA is two (2) years after the cause of action has accrued. 29 U.S.C.§ 255(a). That limitations period is extended to three (3) years after such causes of action accrues for violations that are "willful." A violation under the FLSA's overtime provision is willful if the defendant either knew his or her conduct violated the FLSA or showed reckless disregard for either his or her actions complied with the act. *Morgan v. Family Dollar Stores*, 551 F.3d. 1233, 1280 (11th Cir. 2008); quoting *Alvarez Perez*, 515 Fed. 3d. At 1162-63. Department of Labor regulations define "reckless disregard" as the "failure to make adequate inquiry as to whether

conduct is in compliance with the FLSA. *Alvarez Perez*, at 1163 *quoting* 5 C.F.R.§ 551.104.

As the evidence cited in the preceding section on liquidated damages establishes, not only did Werner not make an adequate inquiry into whether the Plaintiffs were entitled to overtime compensation, they in fact made no inquiry. David Davis's testimony establishes that Werner did not consider in any way whatsoever whether the Plaintiffs were covered by the Act, but they merely assumed that they were under the jurisdiction of the Department of Transportation and therefore exempt from the FLSA. Because Werner acted recklessly in this regard, Plaintiffs are entitled to rely on the three (3) year statute of limitations and summary judgment should be entered on that issue.

**IV.  Werner Failed to Comply with the Department of Labor's Record Keeping Requirements**

The undisputed evidence establishes that Werner has failed to comply with the Department of Labor's regulations regarding record keeping concerning its employees at the Boise facility. As a result of Defendant's failures, Plaintiffs should be allowed by the Court to establish their unpaid overtime compensation by reasonable estimates through Plaintiffs' testimony.

The Department of Labor has established the Fair Labor Standards Act record keeping requirements in 29 U.S.C. § 516.2(a). That regulation sets out twelve records that employers must maintain for each employee who is covered by the FLSA's mimimum wage and overtime pay requirements. Employers are required to maintain most of the same records on employees who are exempt from overtime under the Motor Carrier Act. 29 U.S.C. § 516.12

requires that all of the records except for (6)and (9) found at § 516.2(a) must also be kept on these employees.  The required records which are relevant to this action are found at § 516.2(a)(5) (the time of day and day of the week on which the employees work week begins), § 516.2(a)(7) (the hours worked each work day and the total hours worked each work week and § 516.2(a) (12) (date of payment and the pay period covered by the payment).  Defendant has failed to produce any documents that would satisfy these record keeping requirements.  In this action, Defendant has produced payroll records (Exhibit 22, Sample Payroll Reports), Daily Reports (Exhibit 23, Sample Daily Reports) and Check Inquiry Records (Exhibit 24, Sample Check Inquiries).  None of these records reflect the time of day and day of the week on which the employees workweek begins.  None of these records reflect the hours worked each work day and the total hours worked each workweek.  The daily reports apparently reflect days worked and the hours worked for those days, but the records themselves do not have reflect what year the entries are for, so it is impossible to determine what the accurate amount is for any particular day, week, year, etc.  While the check inquiries reflect the date of payment of wages to the Plaintiffs, these documents do not reflect the pay period recovered by the payments.  Werner, then, has violated the FLSA record keeping requirements and this failure has made it impossible for the Plaintiffs to accurately determine how many overtime hours for which they are owed.

"It is firmly established wherein an employer has not kept adequate records of their employees' wages and hours as required by the FLSA, the employees will not be denied a

recovery of back wages on the ground that their uncompensated work cannot be precisely determined. *Brock v. Norman's Country Market, Inc.*, 835 F2d. 823, 828 (11th Cir. 1988); *Olson v. Superior Pontiac*, 765 F2d. 1570, 1578 (11th Cir. 1985). In the situation where an employer fails to keep accurate records, the plaintiff need only show that he has performed work for which he wasn't properly compensated and put forth sufficient evidence to show the amount and extent of the work as a matter of just and reasonable inference. *Id*. Since Werner's wholly failed to keep adequate records, Plaintiffs should be allowed at the trial of this matter to establish their unpaid overtime compensation by a reasonable estimation of the amount they have been owed. (11th Cir. Pattern Jury Instructions 4.14 Fair Labor Standards Act).

**VI.     Plaintiffs' FLSA Work Week is Monday through Sunday**

Since Plaintiffs' are not exempt from the overtime provisions of the FLSA, one issue that must be resolved is the amount of overtime to which Plaintiffs are entitled. It is undisputed that each Plaintiff worked a "seven on/seven off" schedule working either the day or night shift, twelve hours a day, with the shift beginning on Monday and ending on the following Sunday. There are two (day and night) alternating shifts every week. These work weeks produce forty-four hours of overtime each. Defendants contend that these seven on work days are into two work weeks running from Friday and running to the following Thursday. This would produce two different work weeks within the same pay period, one with four days at twelve hours a day, and the other, three days at twelve hours a day. Obviously,

under this scenario, Plaintiffs would only be entitled to overtime for eight hours worked in the four day work week. The undisputed evidence, however, establishes that Defendants actually paid Plaintiffs on a basis which comports with the Monday through Sunday schedule producing the forty-four hours of overtime per week.

Under the FLSA employers are required to pay employees one and a half times "their regular rate" for each hour, or fraction thereof, worked in excess of forty during any given work week. 29 U.S.C.§ 297(a)(1). Thus, an employees' entitlement to overtime is based on the "workweek concept". Under this concept, in order to determine overtime hours, an employer simply totals the number of hours an employee has worked in any given week. 29 C.F.R.§ 778.103. If the employee has worked greater than forty hours, an employee is due overtime for the excess hours. The FLSA uses a single work week as a standard and does not permit averaging out hours of two or more weeks, even for weeks falling within the same pay period. 29 U.S.C § 778.104. Thus, the case at hand, if the applicable "workweek" is the Monday through Sunday seven-on, seven-off schedule worked by the Plaintiffs, then they would be entitled to overtime compensation for the forty-four hours in that week in spite of the fact they had no hours worked in the second week of their pay period.

The Department of Labor's regulations provide a definition of workweek as follows:

§ 778.105 Determining the workweek

> An employee's workweek is a fixed and regularly recurring period of 168 hours-seven consecutive 24-hour periods. It need not coincide with the calendar week but may begin on any day and at any hour of the day. For purposes of computing pay due under the Fair Labor Standards Act, a single

workweek may be established for a plant or other establishment as a whole or different workweeks may be established for different employees or groups of of employees. Once the beginning time of an employee's workweek is established, it remains fixed regardless of the schedule of hours worked by him. The beginning of the workweek may be changed if the change is intended to be permanent and is not designed to evade the overtime requirements of the Act. The proper method of computing overtime pay in a period in which a change in the time of commencement of the workweek is made, is discussed in §§ 778.301 and 778.302.

29 CFR 778.105

While the workweek need not coincide with the calendar week and may begin on any day of the week and at any hour of the day, once the beginning time of employees workweek is established, it remains fixed regardless of the schedule of hours worked. 29 CFR § 778.105. The undisputed evidence establishes that Werner established that the Plaintiffs' workweek is Monday through Sunday at the beginning of the Boise contract in May of 2010. Because this was established in this manner, it remains fixed regardless of the number of hours that each Plaintiff worked.

Again, Defendant contends that Plaintiffs are subject to a pay period running from Friday through Thursday two weeks later. In spite of this contention, every document in the Plaintiffs' personnel files which reference their work schedule clearly contemplates a seven consecutive day workweek. A handbook entitled "Welcome to Boise" sets out the policies and procedures applicable to Plaintiffs' employment at the Boise location. (Exhibit 25 Werner/Boise handbook). Additionally, Plaintiffs were also provided with a Werner Enterprises Guideline Number 2:13, which was updated on February 1, 2010. That guideline

is entitled "Seven-on Seven-Off Schedule", that document in the first paragraph provides that "the purpose of this policy is to communicate the benefits provided to those employees working the alternate work schedule of working seven days on, seven days off (7/7), and to document the acknowledgment and receipt of this policy." (Exhibit 26, Werner Enterprises' Guideline Number 2:13). These descriptions clearly contemplate the Monday through Sunday seven day workweek that was actually worked by the Plaintiffs. There is no document referencing separate four day and three day work weeks. Additionally, the only time records kept by Werner clearly indicate the Monday through Sunday work week. (Exhibit 23, Example of daily reports). These reports record the Plaintiffs' time worked, and they generally begins on a Monday and end on a Sunday. If Defendants actually considered that the Plaintiffs worked a Friday through Thursday workweek, then surely the time records would be kept in that manner. Logic would dictate that there would be a time sheet for each week showing which week was the four-day week and which was the three-day week. This is in fact a requirement of the Department of Labor's regulations.

The records keeping requirements were set out in 29 CFR § 516-2. Item (7) of that regulation requires that records be maintained which reflect "hours worked each work day and total hours worked each work week. Item 5 of that section also requires that records be maintained that reflect the time of day of the week on which the employees workweek begins. In the case at bar the only documents maintained by the Defendant regarding Plaintiffs' work week clearly indicate that it begins on Monday and continues through

Sunday. Defendant's payroll records fail to give any indication to which work week the Plaintiffs' payroll checks apply (Exhibit 22, Sample payroll report).

Plaintiffs served Defendant with interrogatories on October 24, 2012. (See Exhibit 20, Defendant's Responses to Plaintiffs' First Set of Interrogatories). Interrogatory number eleven, specifically asked Defendant to "Describe the "work week" worked by each Plaintiff during their employment with Defendant. Defendant's response after making several objections was "while employed with the Defendant, Plaintiffs worked a "seven days-on/seven days-off" schedule. When Plaintiffs were on duty, they worked a twelve hour shift from 5:30 am to 5:30 p.m. (Day shift), or 5:30 p.m. to 5:30 a.m. (Night shift). Each seven-on or seven-off week started on Monday at 5:30 a.m., and ended the following Monday at 5:30 a.m." Thus, Defendant's answer to this interrogatory, admits that Plaintiffs' work week was from Monday through Sunday as contended by the Plaintiffs.

At some point later in this case, Defendants realized that this workweek was going to produce liability for forty-four hours per week of overtime and decided to try to wiggle out of that liability. First, on March 28, 2013, on the day of Defendant's 30(b)(6) deposition, Defendant served Plaintiffs' counsel at that deposition with Defendant's Supplemental Responses to Plaintiffs' First Interrogatories. (Exhibit 27, Defendant's Supplemental Responses to Plaintiffs' First Set of Interrogatories). Their response to number eleven had an addition that provided: "however, Plaintiffs pay period and "workweek," as defined by the FLSA starts on Thursday and ends on the following the following Wednesday." In his

deposition Defendant's corporate representative, David Davis, attempted to tailor his testimony to meet with this amendment to the interrogatory Number 11. (Exhibit 21, David Davis' deposition excerpts, pp. 39-49).

Soon thereafter, however, Defendant apparently decided that its best argument was that an employee handbook for Werner's non-driver employees should provided with its best argument   That handbook provides that "Werner Enterprises' workweek runs from Friday to Thursday with pay periods every other Friday".  In order to embrace this  handbook and argue that it applied to the Plaintiffs', the Defendant decided to file Defendant's Second Supplemental Responses to Plaintiffs' First Set of Interrogatories. (Exhibit 28, Defendant's Second Supplemental Responses to Plaintiffs' First Set of Interrogatories).  This revision to Defendant's original interrogatory response provided that "however, Plaintiffs' pay period and "work week," as defined by the FLSA starts on Friday and ends on the following Thursday."  So, as of the 2nd day of April of 2013, Defendants adopted an entirely new defense, trying to limit Plaintiffs' overtime recovery.  Plaintiffs were, however, hired in as over the road drivers who later transferred to the Boise dedicated service.  Such drivers are paid on a weekly basis for their trips. (Exhibit 21 David Davis Supplemental Deposition excerpts p. 93, 158).  The pay period in the non-driver handbook would not apply then.  When Plaintiffs transferred to the Boise service they were given a handbook specific to that service which only references the Monday through Sunday schedule.

Defendant's own actions in paying the Plaintiffs belie Werner's argument.  The first

paycheck received by the Plaintiffs who were hired at the inception of the Boise contract was made on May 20, 2010. Based on the deposition testimony of Mr. Davis, at the point that May 20th a check was printed each employee would be paid for all days worked up to that point. (Exhibit 21 David Davis supplemental deposition excerpts pp. 40-44). This is the end of the alleged pay period and accordingly if one traces back, that pay period would have begun on May 7, 2010. Since service began on May 10th the A-Shift employees would have worked a full seven days prior to the May 20th pay period but the B-Shift employees would have only worked four days. Based on Davis' testimony Plaintiffs' who worked the B-Shifts' checks should have received their pro rata share of their salary through May 20th. (Exhibit 21, Davis David's supplemental deposition excerpts pp. 40-44). In fact, Stanley Robertson and the other B-Shift employees received payment for six days of pay. (Exhibit 29, Affidavit of Stanley Pritchett; Exhibit 30, Pay records of Stanley Pritchett for May 20, 2010). Further evidence that the Monday through Sunday shift was Plaintiffs' workweek can be seen in Plaintiff Sam Montgomery's pay records. Mr. Montgomery worked the B-Shift and accordingly, his scheduled shift would have been from May 17th through May 23rd. He in fact worked five shifts (5/10, 5/11, 5/12, 5/13 and 5/14) the previous week, thus Mr. Montgomery earned an additional $870.00. (Exhibit 31 Sam Montgomery payroll documents). When his paycheck was produced on May 20th, it delineated the separate amounts for the two separate weeks. It shows entries for $870 and $1,176, both described as REGULAR pay. The $870 for the days worked during the week of 5/10 and $1176 for

his regular shift during the week of 5/17. If the Defendant truly was utilizing a Friday through Thursday pay period then Mr. Montgomery's pay would not reflect the Friday extra shift for May 14, 2010 as extra pay as that would be part of the B-Shift first work week and would be included in the line items for his regular shift. The delineation reflected in this check clearly indicates that the work weeks for which the Plaintiffs were paid was Monday through Sunday.

Likewise, none of the B-Shift employees would be paid for any more days than the 17th through the 20th, yet they were. Accordingly, Defendant's actual acts in preparing their payroll and paying the Plaintiffs for their initial pay checks comports with Plaintiffs' contention that their work week runs from Monday through Sunday.

## Conclusion

Because there are no genuine issues of material on each issue discussed above, Plaintiff's are entitled to judgment as a matter of law and thei Motion for Summary Judgment is due to be granted.

/s/ Richard W. Fuquay
Richard W. Fuquay   (FUQUR6214)
DIAMOND FUQUAY LLC
Post Office Box 40600
Mobile, Alabama 36640
Telephone: (251) 432-3362
Facsimile: (251) 432-7702
Email: rwf@diamondfuquay.com

## CERTIFICATE OF SERVICE

   I hereby certify that on November 12, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                */s/ Richard W. Fuquay*
                Richard W. Fuquay